Ms. Cochran is here for the petitioner. Ms. Glaser for the respondent. And Ms. Cochran are you ready to proceed? May you please the court. My name is Johanna Cochran. I represent the petitioner in this case, Mr. Recinos-Coronado. We are here today because there are two very important things that the court can do today. One is to help shape the children's standard asylum for claims for children. I'm sorry. And the second one is to hold the Board of Immigration Appeals and the immigration judge accountable as to the correct way to review these types of claims. In this case, we are saying that both the board and the immigration judge failed to consider the claims of the petitioner as a whole. The nexus in this case was not even addressed. That the BIA and the IJ found that the petitioner did not prove that the government was either unable or unwilling to protect him from the abuse that he suffered because he failed to report. Now we're talking about a claim that has to do with persecution that happened in two stages of Mr. Recinos' life. So part of the persecution... Let me ask you this question. I was unable to determine from the record whether or not the petitioner in this case had previously applied for asylum or CAT relief or withholding of removal. He's been deported four times before? Three times. Oh, three times. This is the fourth time? Yes. Has he applied for relief before? Yes, he did. Okay. All right. Based on these same facts? Different. Okay. So the first time was in the 90s and that was related to guerrilla persecution. So that was a different claim. And he was deported then. Then he came back in 2013 and that's when he asserted his current asylum claim. Okay. All right. And can I ask you a question? I'm sorry, Judge. Can I ask you a question just about the statutory scheme that I'm hoping you can sort of clarify for me? Yes. Whether the claim is based on past persecution or well-founded fear of future persecution, must the asylum seeker also demonstrate that the home country is unwilling or unable to protect? Yes, he does. Okay. So that's helpful. So in a case like this where I think this is a – principally anyway, I'm looking at the uncle incident, which is I think you're – one of the ones you're talking about, which seems one of the more serious ones to me. That's a past issue. Yes. And so how does the failure to – the alleged failure to report, where does that fit? Is that sort of part of past persecution or is that part of the separate standalone requirement that he show unwillingness or inability to protect? So for the petitioner to show that he suffered persecution, he has to – it's – there are different components to it. So one is you have to show that there's nexus, right, so that the harm that you suffered has to do with one of the protected grounds. So in this case, he's a homosexual male from Guatemala. That's our protected ground. The other one is for you to find – for the court to find that there is persecution, you have to show that the harm rose to the level of persecution. It can't just be just harassment, verbal threats. But you also have to show as a petitioner that the government is unwilling or unable or both to control that abuse or to control the persecutors. So it's – the burden is on the petitioner to show that. And so there is no absolute requirement to report abuse to the police because there are different reasons why you would not be able to do that. You would be not willing and sometimes just not physically able to do that. So there is case law that says you either – in those cases, because there's no absolute requirement to report, you either have to show that you would have been futile or that you would have been subjected to future abuse had you report – had you reported this. Well, that's – I mean, I think that's an important consideration because you understand the standard of review. The record has to compel a contrary conclusion to the conclusion that was reached by the Board of Immigration Appeals. And so I guess one of the concerns that I have from the record is if he goes back, can the government protect him? If he's deported, will the government be able to protect him? Why does the record compel a conclusion contrary to that? Your Honor, in fact, the record is quite extensive. We have a report from an expert who was able to testify that day at the individual hearing. We have numerous newspaper articles. We have country reports from the Department of State. We have non-governmental agencies who provided reports for this – just for this particular case. We also have other governmental agencies in several reports in the record that show that this society as a whole has a – has a big discrimination problem against LGBT individuals, but also the police. And sometimes the police is actually the one who is directly responsible for the deaths of these individuals. There is a lot of arbitrary detention and arrest. There are several reports of LGBT individuals being raped, being beat up. In fact, the petitioner was actually beat up on the street, you know, on the public street just in front of several people, brought that lie. Didn't the police – they did investigate that incident, right? Is that the one we're talking about, the 2013? Yes, and that was three individuals who beat him up. There was a police report made. That's it. I see. The – what the – Nothing ever came of it. Nothing ever came out of it. Nobody has been caught. In fact, there's actually no evidence that the police is actually investigating this report. So all there is is just a writing that says, this is what happened to me, and that is it. So for us, we think that the petitioner has – Of course, that was just one beating, though, right? I mean, you've got to – in order for the record to compel a contrary conclusion, when you look at our prior precedent, I mean, you need a lot of evidence. You need a lot in the past. And the only thing we have in this record is a single beating, right? Well, that's what you would have – Single beating, harassment by classmates, and his father is ashamed of him. But the difference is the age. And so this is one of the errors that both the BIA and the IJ committed, and that's because the persecution that happened while he was a child has to be looked at from the child's perspective. So a child does not have to suffer the same level of harm that an adult would. And this is what the board and the IJ failed to address. So we have somebody who was a 9-year-old who was humiliated by his classmates often, whose father told him that he would rather see him dead, an uncle that forced him to have oral sex with him, that would threaten him with hurting his loved ones if he ever reported his abuse to anybody. So all of those things, if we – you have to analyze them in the aggregate. The past persecution and the persecution that happened while he was an adult put them together and then figured out is this harm that rises to the level of persecution. So neither the board nor the IJ did this. What – I'm sorry that I've lost track of the timeline here, but what was the – so he was 8 or 9 when the uncle incident occurred, right? Right. And the teasing by the classmates. And then what about the beating? How much time elapsed between those incidents? We're talking about 30 years later. Thirty years? Yes. Oh, wow. So he spent a big part of his life in the U.S. Yes, he came here when he was 17, and then he was deported around 2010. I see. So the uncle incident occurred before he originally came. Then he was deported. Then the three-man beating happened later. That's right. Got it. Yes. Okay. So we're – Go ahead, please. We're saying that there's in both instances the harm that he suffered while he was a child and then the harm that he suffered while he was an adult that were both based on his status as a homosexual male. So really 30 years passed in between, and he is still suffering harm from his people in Guatemala because he's a homosexual male. So we have – there is enough evidence in the record to show that things in Guatemala have not changed. They're not – they're probably not going to change in the near future. So the – one of the things from the BIA decision in – that the government says that the BIA actually addressed these claims, we do not agree with this, and that's one of the things that many of the decisions that have handled children asylum cases in other circuits, they usually use one or two sentences just to say we are aware of the age of the asylum seeker, and that is not enough to have a meaningful review of these cases. So one of the things that we want to see is a meaningful discussion of the petitioner's age. Has this court – I guess I read the recent Ninth Circuit decision where they flipped their earlier decision. Has this court ever sort of engaged the age issue specifically? And I guess it could run either, as you suggested earlier, to the level of harm encountered, but what I thought you were going to say is instead that it might run to the requirement that there be a report, that you wouldn't expect perhaps an eight- or nine-year-old to report to police necessarily the same way you would a 40-year-old. But so has this court ever said anything about the age issue and how it ought to fit into these various inquiries? No, Your Honor. You were actually close. This court was close to do that last year in the case of Yasmik Jhun versus Attorney General. This was a case about a Haitian homosexual. However, unfortunately, the petitioner did not raise the issue of the children's standard, and it's actually very similar issues to ours. The issue of the children's standard and then the board failing to look at the evidence as a whole, he did not raise that properly on the notice to appeal, so you did not address that. The only other case that probably comes a little close to that would also be August Mon versus Attorney General. That's a 2015 case, but that's a withholding-only case, and it was denied for other reasons. There was no nexus there. So there hasn't been a really good opportunity to have this discussion. And would you tell me, so the first case, would you just either give me the name or the citation for that again, the one that you mentioned? Yes. Well, that is Yasmik Jhun. I don't have the actual citation, Your Honor. No, no, no. That's okay. Would you just spell the last name for me? Yes. It's J-E-U-N-E. Got it. Okay, good. Thank you. So, and the other issue with the decisions, with the decision from the Board of Immigration Appeals is that the evidence was not considered as a whole. So that is one of the things that the board has to do. So, and that follows that their decision is not supported by substantial evidence. There were things that were missing from the record. For example, the expert witness report was not properly considered. Even though the petitioner was found credible, there were still some issues as to his testimony regarding his injuries. We went to the board on this too. They said that he had said that, the petitioner had said that his nose had been broken, but there was an issue with the medical records, even though the medical records are pretty extensive on the record. So, those are some other things that we need to consider. I see that my time is up. All right. Thank you, Ms. Cochran. We'll hear from Ms. Glazer. Good morning. May it please the Court, Sherry Glazer appearing on behalf of the United States Attorney General. Your Honors, in this case, Mr. Racines Coronado simply fails to meet his burden to present evidence that compels the conclusion that he is eligible for asylum, withholding of removal, and protection under the CAT. A few points I'd like to make first is that he just argued that all that was done after the 2013 beating was that the police took a report, and that's not true. He testified contrary to that. He testified that the police took a report, the police investigated the incident, and at the time of his hearing, he even testified that the police were still looking for the individuals who beat him. And this Court has held in cases that when the police investigate an incident like that, that the individual did not show that the police were unwilling or unable to protect him. And that I can, citations are 216 Federal Appendix 963 and 512 Federal Appendix 963. But there's also country reports in the record prepared by our State Department highlighting the fact that the Guatemalan police regularly threaten, abuse, and extort members of the gay community. And that they rarely conduct any meaningful investigation of the crimes committed against members of the gay community. Guatemala is recognized as one of the most dangerous Central American countries for the gay community. And there are no laws on the books to protect the gay community from harm. That seems pretty strong to compel a contrary conclusion. There is a lot of evidence in this record saying that shows that. But I would argue that that record, that that evidence is old and it's outdated. A lot of the evidence predates 2013. It's not recent. And for a lot of those arguments, he relies on his expert and his expert's testimony. And she also relied on outdated evidence. A lot of her evidence was between 2003 and 2006. And I can point the court to several citations. It's 560 to 626, 672 to 686, 305 to 308, 330, 332. Don't we have to decide the case based on this record? Yes. But I would point the court to more recent evidence how, again, in 2013 the police did help him. They investigated the incident and they were still looking for who perpetrated the attack. And recent evidence shows that the Guatemalan. Nothing ever came of that. Nothing ever came of that. But that's because he gave very vague descriptions of the individuals. He didn't know their names. He gave descriptions that included body type, that included hair color, skin color. But that was all the information that he gave. So it's presumable that the police have not found the individuals because they didn't have enough information to go on. I assume just for the purposes of this question that it were found that there was a pattern in practice of persecution. Is there any evidence in the record developing whether moving to a different part of Guatemala might suffice? There is. There are two points that I would like to make also. The first point is they never argued, he never argued a pattern of practice argument to the board. Two statements in the briefing regarding pattern of practice. Briefing to this court? Yes, there was. I would argue that he failed to exhaust that before the agency. My second point would be this case was the agency found that he didn't show past persecution. So the relocation finding would really only come into context with regards to the CAT claim. But I would argue that there's evidence in the board that shows that he could relocate. There's evidence showing that Guatemala City now has a large active gay community. There's gay pride parades. There's bars that are catered towards the LGBT community. And there's evidence in the record that a town north of Guatemala City, Antigua, has a very open gay community. And there's a blurb in the record regarding a man who's had a longtime male partner and he lives in Antigua. And he discusses how he lives openly. He has friends in the LGBT community. He has friends who are not in the LGBT community. And nobody cares that he has a male partner. And that is on page 676 to 677. So can I ask you, I guess I want to ask you the same question that I asked your opponent. I'm just trying to get straight in my own head. The uncle incident, the alleged failure to report the uncle incident, does that run, is that a past persecution issue or an unwillingness to protect issue or both? It's both. In order to show past persecution, an applicant has to show three things. Has to show that the harm had a nexus to a protected ground under the INA, that the police were unwilling or unable to protect him, and that all of the harm that fit into the definition of persecution rose to the level of persecution. So it's both unwilling or unable standard fits into whether he showed he suffered past persecution. Got it. Even though sort of logically the unwilling or unable seems to be sort of a forward-looking thing, right? It fits into the past persecution disjunction of the standard. Well, in this case, we would look at whether there's, because he didn't report it and the government isn't arguing that a child of eight or nine years old has to report sexual abuse to the police, that would be an unreasonably high standard for a child to meet. But the question still remains that he needs to show, according to this court's case law, whether it would have been futile to report the abuse, and looking at the record to see essentially how the police would have reacted if he'd reported and a child went to the police saying he'd been sexually abused. And I point this court to evidence in the record that there is, that the police would have been willing and able to protect him. There's evidence showing that the Secretariat of Social Welfare provides shelter and assistance to children who've been victims of abuse. There's a unit of adolescent and child victims in the special prosecutor's office, and they investigate cases of child abuse. And the public ministry has released numbers of convictions for sexual abuse of a minor through the years. That's all in the record on 404, 436, 468, and 501. So let me ask you this. So if the government is conceding that an eight- or nine-year-old certainly doesn't have an obligation to report conduct like this to police, why isn't that sort of a standalone exception to the reporting, the presumptive reporting requirement instead of sort of in addition to futility? Why shouldn't the child victim also get a pass on having to show futility? Well, because then he wouldn't hear, the child would not be meeting the overall standard for asylum. There's no case law in any circuit that I know of that exempts a child from meeting that third requirement in order to establish eligibility for asylum. That would really be exempting them from the overall standard that everyone has to meet, even though there is no requirement that he has to report. And, Your Honors, He's being deported because, what, his visa has expired? To be honest, I can't remember whether he came in on a visa. He's being deported because he has no legal status to be here. But as to how he entered the country, I don't have that fact at the top of my head. I can't remember. With regards to the other incidents, Mr. Racino's Coronado made an incorrect statement in saying that the board did not cumulatively look at the incidents that fit in the definition of past persecution, which would be the teasing by his classmates, the statements by his father, and the 2013 beating. But the board did. That's on page four. There's a statement saying in the first full paragraph, it starts six lines from the bottom, saying, The mistreatment described by him did not rise to the level of persecution, even when considered cumulatively with his father's statements and the 2013 address. And that's a paragraph that focuses on the harassment by his classmates. So the board did cumulatively look at the incidents that fit in the definition of persecution. And I would argue that this court has, it hasn't made a blanket statement about the standard related to a child. But if this court looked at Guzman-Hernandez, that's 611 Federal Appendix 956, the applicant in that case was applying for asylum based on incidents that happened to him when he was a child. And arguably, all of the incidents that happened to him when he was a child were more severe than in this case. In that case, all the incidents were based on his sexuality. He was teased by his entire community and verbally abused by his community. His neighbors told him that he shouldn't be gay. His classmates teased him. His parents verbally abused him. His parents also physically abused him, forced him to work in the field for long hours and deprived him of food. And this court found that that was all on account of his sexuality. But none of that rose to the level of past persecution. And arguably, everything that happened to him as a child was much more severe than what happened to Mr. Racino's Coronado in this case and did not rise to the level of past persecution. And when this court has found that conduct does rise to the level of past persecution, it's continued, it's repeated, it's very severe. We have a case, Mejia, and that is 498 F. 3rd, 1253. In that case, this court found that the applicant's past harm did rise to the level of past persecution. Over a period of 14 months, she was threatened by a mail and telephone. She was pulled out of her car by her hair. She was thrown face first on the ground. She had a man's foot jarred in her head. Quote, unquote, death to help with love was painted in red on her parents' door. The FARP killed a family friend when they had come to her family farm looking for her. She experienced several more threats and she experienced another severe beating. And all of that was continuous and repeated over a period of 14 months. And that is the kind of past harm that this court has found rises to the level of persecution, not the harm in this case, which is both less severe and there are long intervals of time between each incident. So you guys are going to think I'm the densest judge who ever has been. But I'm going to circle back to this, how it is that youth, how it is that the presumptive reporting requirement, youth and futility sort of tie together into this unable or unwilling to protect thing. So I think you answered my question, why isn't there, in effect, a youth exception, not only to the reporting requirement but also to the futility proviso? You said because that would exempt the youth from meeting the unwilling or unable to protect standard. I just don't think I understand that. I mean, like, so the youth presumably would still have to show unwilling or unable to protect. It's just that his or her failure to report it wouldn't be a bar to his ability to show unable or unwilling to protect. Correct. I mean, I think this case would be different if the record didn't have any indication how the Guatemalan authorities would have reacted had they known about his uncle's conduct. The Ninth Circuit kind of discussed this in Bringus-Rodriguez, and it said that there may be some cases where, you know, again, we can't expect children to report it, and if children aren't reporting it, there may be cases where there just is no record evidence showing how the authorities would have reacted had they known about it. But the Ninth Circuit really emphasized that in these cases, we still need to look at the record to see what we have regarding this issue. And if there weren't any evidence in this record, I would argue this court probably should send it back, but there is evidence in this record. So that's why he does not meet his burden to compel the conclusion that the police were unwilling or unable to protect him, because there's evidence in the record showing that the Guatemalan authorities do protect child victims of sexual abuse. Got it. And one quick point. I would also like to make sure the court is aware of that one of the, for the well-founded fear, one of the factors that the board relied on was that he remained unharmed in Guatemala for four months after his 2013 beating. And Mr. Racino's Coronado emphasizes his argument that, sure, he wasn't harmed during those four months because he never left his house, but that's not true. In his declaration, he says that he went out with other people after the beating, and he testified that thieves robbed him after that 2013 beating during those four months. So that's on page 204 and 364. So based on this record, it's simply not true that he remained in his home for those four months, which is why he was never hurt or injured after. But if your honors have no more questions, thank you very much. Thank you. Ms. Gleiser, we'll hear again from Ms. Cochran. Yes, Your Honor, I do want to go back to the futility in reporting, because I think that even if we're not arguing that there should be a blank exception, although the failure to report is really not a statutory requirement. This is all case law. What is statutorily required is that you have to show that the government is unable or unwilling to control the abuse that's happening to you. So one of the options, or I guess, yes, one of the options that the Brinkus-Rodriguez case talks about is filling that gap with documentary evidence. So I think it's important for a petitioner to have quality and quantity of evidence to be able to show that a reporting of the abuse or that the police is not going to be able to work with you to apprehend these abusers. You have to have evidence. So the petitioner in this case has substantial evidence, significant evidence to support his request for asylum and withholding. We even have a, I was just looking at it, we have a news article from 2014 about reports of children getting expelled from school because the teachers have found out that they are homosexuals. So it's really, and the Brinkus-Rodriguez case also talks about how you have to be cautious about not equating legal progress with social progress. The fact that there is an office created to be able to help the victims of abuse doesn't actually mean that this office is effective. And so we have a lot of evidence in the record to show that the police or the judicial organizations in Guatemala are just simply ineffective. So we're actually having to show both. The police are unwilling to help because they're sometimes the prosecutors, and the social structure and the judicial structure in Guatemala is actually unable because they are incompetent and they just do not want to deal with these individuals. So your point about the failure to report the uncle abuse is, it doesn't bar, it's not a preclusion to your argument to meet the unwilling and unable prong of the test. But at that point, I guess there's a separate question. Are we now just in sort of a contest of warring bodies of evidence about whether the government in Guatemala can or will protect? And you say we've got this evidence and an expert and stuff that says no. And she says, oh, but they investigated this 2013 incident and, you know, she's got this body of evidence. And if we're left in that situation, given the standard of review, isn't it sort of tough for you? It is. And I would think that this is a better job for the trial effect. And the problem here is that both the board and the IJA did not consider the evidence as a whole. They did not— Explain to me your position in that regard, given the specific wording in it, the determination. How do you maintain that they didn't look cumulatively? Well, the thing is that the board didn't even get to the persecution part. So as I was explaining before, there are different small parts that you have to show in order to be able to prove that you have been persecuted. So one of them is a nexus. You have to show that you were persecuted because you were gay. You have to show that the harm that you suffered was serious enough. And you have to show that the government was not able or was unwilling to help you. So in this case, the board didn't even get to the—they didn't find any nexus, for example. They didn't say—they didn't address the issue. Sorry. They did not address the issue. So there were little things put together. They reached the conclusion that there was no persecution, but there was no meaningful discussion of the nexus. They said that because there was a failure to report, then the petitioner could not show that the government was unwilling and unable. So they just cut off that analysis right there to find that there was no persecution. So we're trying to say that they are—they did not apply the correct standard. They did not look at the evidence as a whole, and they did not use the right children's standard for this claim. So a statement, just like the government said that they used—first of all, they didn't even include the sexual abuse from the uncle in that statement that the government just quoted. The fact that you were mentioning it in just one sentence is not a meaningful review. It's not a meaningful use of the children's standard. We need something more. No more questions? My time is up. Thank you. All right. Thank you, counsel.